1  Abraham J. Colman (SBN 146933)
   acolman@reedsmith.com
2  Felicia Y. Yu (SBN 193316)
   fyu@reedsmith.com
3  Jordan Yu (SBN 227341)
   jsyu@reedsmith.com
4  REED SMITH LLP
   355 S. Grand Avenue, Suite 2900
5  Los Angeles, CA 90071
   Telephone:    213.457.8000
6  Facsimile:     213.457.8080

7  Attorneys for Defendant
   Barclays Bank Delaware

8

9

10                    UNITED STATES DISTRICT COURT

11                  SOUTHERN DISTRICT OF CALIFORNIA

12

13  Ramon Gutierrez and Clariza Gutierrez, on behalf    Case No.:  11-CV-0289 LAB WMc
    of themselves and all others similarly situated
14                                                      **CLASS ACTION**
                        Plaintiffs                      **MEMORANDUM OF POINTS AND**
15                                                      **AUTHORITIES IN SUPPORT OF**
                                                        **DEFENDANT BARCLAYS BANK**
16         vs.                                          **DELAWARE'S MOTION TO COMPEL**
                                                        **INDIVIDUAL ARBITRATION AND TO**
17  Barclays Bank Delaware,                             **STAY ACTION**

18                      Defendants.                     Honorable Larry Alan Burns

19                                                      Date:        August 22, 2011
                                                        Time:        11:15 a.m.
20                                                      Courtroom: 9

21                                                      [Filed Concurrently with Notice of Motion;
                                                        Declaration of John Graser; Declaration of
22                                                      Jordan Yu]

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   FACTUAL BACKGROUND .....................................................................................1

      A.    Barclays Issued Credit Cards to Plaintiffs Governed By a Written Credit
            Card Cardmember Agreement ...................................................................1

      B.    By Using Their Credit Cards, Plaintiffs Agreed to the Terms of the
            Account Agreement. ..................................................................................3

      C.    Material Allegations of the Complaint .....................................................5

III.  LEGAL ARGUMENT ................................................................................................5

      A.    The Federal Arbitration Act Governs The Arbitration Provision. ............5

      B.    Plaintiffs Are Required to Arbitrate Their Claims Against Barclays. .......7

            1.    A Valid Arbitration Agreement Exists Between Ramon Gutierrez
                  And Barclays. ...................................................................................8

            2.    A Valid Arbitration Agreement Exists Between Clariza Gutierrez
                  And Barclays. ...................................................................................9

            3.    Any Dispute Over Whether Plaintiffs are Bound by the
                  Arbitration Provision Must Be Decided by the Arbitrator...........13

      C.    Plaintiffs' Claims Fall Within The Scope Of The Arbitration Provision ...................13

      D.    Plaintiffs Agreed to Arbitrate Their Disputes an an Individual Basis .........................15

      E.    This Action Should Be Stayed Pending Arbitration ...................................17

IV.   CONCLUSION...........................................................................................................17

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARCLAYS BANK
DELAWARE'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY ACTION

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

**Cases**

*Allied-Bruce Terminix Companies v. Dobson*,
    513 U.S. 265 (1995)........................................................................................ 6

*Am. Tel. and Tel. Co. v. Winback and Conserve Program*,
    42 F.3d 1421 (3rd Cir. 1994) ........................................................................ 10

*Anderson v. Delta Funding Corp.*,
    316 F. Supp. 2d 554 (N.D. Ohio 2004) ........................................................... 7

*Arellano v. T-Mobile USA, Inc.*,
    2011 WL 1842712 (N.D. Cal. May 16, 2011) ............................................... 17

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (Apr. 27, 2011)....................................................... 1, 16, 17

*AT&T Technologies, Inc. v. Comm. Workers of Am.*,
    475 U.S. 643 (1986) ................................................................................ 8, 14

*Awuah v. Coverall N. Am., Inc.*,
    554 F.3d 7 (1st Cir. 2009) ............................................................................ 14

*Balar Equip. Corp. v. VT Leeboy, Inc.*,
    336 Fed. Appx. 688 (9th Cir. 2009) .............................................................. 14

*Bellows v. Midland Credit Mgmt.*,
    2011 WL 1691323 (S.D. Cal. May 4, 2011) ..................................... 8, 14, 17

*Berman v, Dean Witter & Co., Inc.*,
    44 Cal. App. 3d 999 (1975) .......................................................................... 12

*Carmack v. Chase Manhattan Bank (USA)*,
    521 F. Supp. 2d 1017 (N.D. Cal. 2007) ........................................................... 8

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003) ......................................................................................... 7

*Credit Acceptance Corp. v. Davisson*,
    644 F. Supp. 2d 948 (N.D. Ohio 2009) ........................................................... 6

*Davis v. JP Morgan Chase Bank*,
    2004 WL 783382 (N.D. Ill 2004) ................................................................... 9

*Day v. Persels & Assocs., LLC.*,
    2011 WL 1770300 (M.D. Fla. 2011) ............................................................ 17

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ....................................................................................... 8

*Eagle Star Ins. Co. v. Highlands Ins. Co.*,
    165 Fed. Appx. 529 (9th Cir. 2006) .............................................................. 14

*Fahey v. U.S. Bank Nat. Ass'n*,
    2006 WL 2850529 (E.D. Mo., 2006) ............................................................. 9

*Fazio v. Lehman Bros. Inc.*,
    340 F.3d .......................................................................................................... 14

*Fisher v. Townsends, Inc.*,
    695 A.2d 53 (Del. Supr. 1997) ...................................................................... 10

*Heiges v. JP Morgan Chase Bank, N.A.*,
    521 F. Supp. 2d 641 (N.D. Ohio 2007) ........................................................... 9

- ii -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARCLAYS BANK
DELAWARE'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY ACTION

*In re Checking Account Overdraft Litigation*,
    2011 WL 1663989 .................................................................................................... 17

*International Paper Co. v. Schwabedissen Maschinen & Anglagen GMBH*,
    206 F.3d 411 (4th Cir. 2000) ................................................................................. 13

*Larson v. Speetjens*,
    2006 WL 2567873  (N.D. Cal. 2006) ............................................................. 12, 13

*Letizia v. Prudential Bache Securities, Inc.*,
    802 F.2d 1185 (9th Cir. 1986) ............................................................................. 12

*Madrigal v. New Cingular Wireless Servs., Inc.*,
    2009 WL 2513478 ................................................................................................. 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ..................................................................................... 7, 8, 17

*Monex Deposit Co. v. Gilliam*,
    616 F.Supp.2d 1023 (C.D. Cal. 2009) .................................................................. 14

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .......................................................................... 5, 6, 14, 17

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    7 F.3d 110, 1121 (3rd Cir. 1993) ......................................................................... 12

*Providian Nat'l Bank v. Screws*,
    894 So.2d 625 (Ala. 2003) ..................................................................................... 7

*Rodriguez v. American Techs., Inc.*,
    136 Cal.App.4th 1121-22 (2006) ........................................................................... 6

*Sedima S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) .............................................................................................. 15

*Shearson/American Express, Inc. v. McMahon*,
    482 U.S. 220 (1987) .................................................................................... 5, 8, 15

*Staples v. The Money Tree, Inc.*,
    936 F. Supp. 856 (M.D. Ala. 1996) ....................................................................... 6

*Stolt-Nielsen, S.A. v. Animal/Feeds Int'l Corp.*,
    130 S. Ct. 1758 (2010) ......................................................................................... 16

*Sun Microsystems Inc. v. Hynix Semiconductor, Inc.*,
    622 F. Supp. 2d 890 (N.D. Cal. 2009) ................................................................. 10

*Terminix Int'l Co. v. Palmer Ranch Ltd.*,
    P'Ship, 432 F.3d 1327 (11th Cir. 2005) ............................................................... 14

*Thomas O'Connor & Co. v. Ins. Co. of North America*,
    697 F. Supp. 563 (D. Mass. 1988) ......................................................................... 6

*United States v. Baker*,
    82 F.3d 273(8th Cir. 1996), cert. denied, 519 U.S. 1020 (1996) .......................... 7

*United States v. Wadena*,
    152 F.3d 831 (8th Cir. 1998), *cert. denied*, 526 U.S. 1050 (1999) ...................... 7

*Volt Info. Sciences, Inc. v. Bd. of Trustees*,
    489 U.S. 468 (1989) ............................................................................................... 7

*West v. Flonard*,
    2010 WL 892190 (Del. Super. 2010) .................................................................... 10

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

- iii -

*Whitman v. Capital One Bank (USA) N.A.,*
  2009 WL 4018523 (D. Md. Nov. 19, 2009) ................................................................. 9

*World Group Securities, Inc. v. Allen,*
  2007 WL 4168572 (D. Ariz. Nov. 20, 2007) ......................................................... 12, 13

*Zarandi v. Alliance Data Sys., Corp.,*
  2011 WL 1827228 (C.D. Cal. May 9, 2011) ............................................................. 17

**Statutes**

9 U.S.C. § 1 .................................................................................................................... 6

9 U.S.C. § 2 .................................................................................................................... 5

9 U.S.C. § 3 .................................................................................................................. 17

9 U.S.C. § 4 .................................................................................................................. 15

Cal. Pen Code § 637.2 ..................................................................................................... 5

Cal. Pen. Code § 632 ...................................................................................................... 5

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARCLAYS BANK
DELAWARE'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY ACTION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## I.   INTRODUCTION

Plaintiff Ramon Gutierrez applied for a credit card account ("Account") with Defendant Barclays Bank Delaware ("Barclays"). Barclays approved Plaintiff Ramon Gutierrez's application, and issued a credit card to him as the primary Account holder and a separate credit card to his wife, Plaintiff Clariza Gutierrez, as the sole authorized user of the Account. The Account was governed by a written Credit Card Cardmember Agreement (the "Account Agreement"). After collectively incurring over $6,000 in charges on the Account using their respective credit cards, Plaintiffs defaulted on the Account. To date, the Account balance remains unpaid. Now, Plaintiffs pursue this putative California-wide class action alleging that Barclays violated California Penal Code Sections 637 and 632.7 by recording, monitoring or eavesdropping on several debt collection calls with Plaintiffs without first obtaining Plaintiffs' consent. Based on this allegation, Plaintiffs assert two causes of action: (1) "unlawful invasion of privacy (Penal Code Section 632 and 637.2)" and (2) "injunctive relief – Penal Code Section 637.2(b)."

Plaintiffs' claims, however, cannot proceed in this judicial forum or on a class-wide basis. First, pursuant to the Account Agreement, Plaintiffs expressly agreed to arbitrate all disputes with Barclays "arising from or relating in any way" to the Account, including those based on tort or statute. Further, Plaintiffs agreed to arbitrate all such disputes with Barclays on an individual basis. The Federal Arbitration Act and the United States Supreme Court's recent decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (Apr. 27, 2011) mandate that the parties' agreement to arbitrate be enforced and that Plaintiffs arbitrate their claims against Barclays on an individual basis. Accordingly, Barclays respectfully requests that the Court compel individual arbitration of Plaintiffs' claims and to stay this action pending completion of the arbitration.

## II.   FACTUAL BACKGROUND

### A.   Barclays Issued Credit Cards To Plaintiffs Governed By A Written Credit Card Cardmember Agreement.

On September 24, 2008, Barclays received an on-line electronic application for a "Juniper" branded credit card account (the "Account"). Declaration of John Graser ("Graser Decl."), ¶ 4. Specifically, Plaintiff Ramon Gutierrez applied for the Account as the primary account holder and

- 1 -

1  Plaintiff Clariza Gutierrez was listed on the application as the sole authorized user of the Account.

2  Graser Decl. ¶ 4.  Barclays approved the Account application and issued a credit card to Ramon

3  Gutierrez as the primary accountholder (card number ending in 1717) and a separate credit card to

4  Clariza Gutierrez as an authorized user (card number ending in 1725).  Graser Decl. ¶ 5.  On

5  September 30, 2008, Barclays mailed these two credit cards to Plaintiffs in one envelope.  Graser

6  Decl. ¶ 6.  In this same envelope, Barclays also sent Plaintiffs the Account Agreement.  Graser Decl.

7  ¶ 6.

8      The Account Agreement contained the terms and conditions governing the Account.

9  Captioned in bold print, the Account Agreement included an arbitration provision ("Arbitration

10 Provision").  Exh. C to Graser Decl.  The first paragraph of the Arbitration Provision explains, in

11 plain English, the broad scope of the claims subject to arbitration, that "you," any "authorized user

12 on the Account," "agents" or "beneficiaries" of "you"  are parties to the Arbitration Provision, and

13 that claims must be arbitrated on an individual basis:

14     **Arbitration**

15     Any claim, dispute or controversy ("Claim") by either you or us
       against the other, or against the employees, agents or assigns of the
16     other, arising from or relating in any way to this Agreement or
       your Account, or any transaction on your Account including
17     (without limitation) Claims based on contract, tort (including
       intentional torts), fraud, agency, negligence, statutory or regulatory
18     provisions or any other source of law and Claims regarding the
       applicability of this arbitration clause or the validity of the entire
19     Agreement, shall be resolved exclusively and finally by binding
       arbitration under the rules and procedures of the arbitration
20     Administrator selected at the time the Claim is filed.  The
       Administrator selection process is set forth below.  For purposes of
21     this provision, "you" includes any authorized user on the Account,
       agents, beneficiaries or assigns of you; and "we" or "us" includes
22     our employees parents, subsidiaries, affiliates, beneficiaries, agents
       and assigns.  Claims made and remedies sought as part of a class
23     action, private attorney general or other representative action are
24     subject to arbitration on an individual basis, **not** on a class or
       representative basis.
25
26 Exh. C to Graser Decl. (emphasis in original).[1]

27 ────────────────────────

28 [1] The Account Agreement contains the following definitions section:  "Definitions.  'You' and 'your' refer to each

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

The Arbitration Provision, in a subsequent paragraph, again emphasizes that no class actions are allowable in arbitration without the written consent of both Plaintiffs and Barclays:

> **No class actions, other representative actions or joinder or consolidation of any Claim with a Claim of any other person or entity shall be allowable in arbitration, without the written consent of both you and us.**

Exh. C to Graser Decl. (emphasis in original).

**B.    By Using Their Credit Cards, Plaintiffs Agreed to the Terms of the Account Agreement.**

In this case, Plaintiffs cannot credibly dispute that they received credit cards from Barclays, or deny that they made purchases using those credit cards.[2]  In fact, Ramon Gutierrez testified as follows:

Q:    Do you recall making charges on the Juniper account?
A:    Yes.

Q:    Okay.  Do you recall getting an actual credit card in the mail?
A:    Yes.

Q:    Do you recall your wife getting an actual credit card in the mail?
A:    Yes.

Q:    Okay.  Did you make charges on the Juniper Barclays account?
A:    Yes.
        …
Q:    Okay.  Do you see down below there's a card for – there's a transaction activity for Ramon Gutierrez.  Do you see that?
A:    Uh-huh, yes.
Q:    Do you see below that there was transaction activity for Clariza Gutierrez?
A:    Yes.

---

person who has applied for, accepted, or used the Account and each person who has agreed to be responsible for the Account."  Exh. C to Graser Decl.  Relevant sections of the Account Agreement are bracketed for the Court's convenience.

[2] On May 12, 2010, Plaintiffs filed another putative class action against Barclays, *Ramon Gutierrez and Clariza Gutierrez v. Barclays Group.*, 10-cv-1012 DMS, alleging a violation of the Telephone Consumer Protection Act ("TCPA"), codified at 47 U.S.C.§ 227 *et seq.*  In connection with that lawsuit, on December 28, 2010, Plaintiffs were deposed about their use of the subject Account and the credit cards issued to them by Barclays.  *See* Exhs. A and B to Declaration of Jordan Yu.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Q:    Okay.  So does that refresh your recollection that your wife may
      have used the account?
A:    Yes.

Deposition of Ramon Gutierrez ("RG Dep.") p. 59-11-22, 71:15-25, Exh. A to Yu. Decl.

    As for Clariza Gutierrez, she admitted to being the authorized user on the Account and
making purchases with her credit card:

Q:    Do you recall being issued an actual credit card on the Juniper
      account?
A:    Yes.
      …
A:    As my understanding, I was just an authorized user.
      …
Q:    Did you make any charges on the account?
A:    Yes.
      …
Q:    It's the third page.  And do you see that there's a summary of
      transaction activity for you?
A:    Yes.

Deposition of Clariza Gutierrez ("CG Dep.), pp. 58:7-9, 36:12-13, 42:15-16, 43:16-18, Exh. B to Yu
Decl.

    By making purchases on their respective credit cards, Plaintiffs agreed to the terms and
conditions set forth in the Account Agreement, including the Arbitration Provision:

**Using Your Account/Acceptance of These Terms**

By signing, keeping or using your Card or Account, you agree to
the terms and conditions of this Agreement.

Exh. C to Graser Decl.

    In fact, by making purchases on their respective credit cards, Plaintiffs also expressly agreed
that Barclays may record or monitor any telephone calls with Plaintiffs, whether the call is initiated
by Barclays or Plaintiffs:

**Phone Calls/Electronic Communications**

In the regular course of our business, for quality control purposes,
we may monitor and record phone conversations made or received
by our employees.  Similarly, we may monitor and record e-mail
or conversations on our website between you and our employees.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

> You agree that we will have such right with respect to all phone conversations, e-mail or conversations between you and our employees, whether initiated by you or any of our employees.

Exh. C to Graser Decl.

### C.   Material Allegations of the Complaint

Against this backdrop, Plaintiffs' Complaint alleges as follows:  Plaintiffs incurred a personal debt to Barclays on the Account and subsequently fell delinquent on the Account.  Complaint ("Comp.") ¶¶ 13, 14, 15.  As a result, Barclays called Plaintiffs on several occasions to collect on the Account. *See* Comp. ¶¶ 16, 17.  Plaintiffs allege that Barclays, without giving notice to Plaintiffs or obtaining Plaintiffs' consent, monitored, eavesdropped on, or made "other unauthorized connections to" the collection telephone calls between Barclays and Plaintiffs. *E.g.* Comp. ¶ 26.  As a result, Barclays purportedly violated California Penal Code Section 632 and 637.2.[3]

## III.   LEGAL ARGUMENT

### A.   The Federal Arbitration Act Governs The Arbitration Provision.

The Federal Arbitration Act, codified at 9 U.S.C. § 2 *et seq.*, "is a congressional declaration of a liberal policy favoring arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Congress enacted the FAA to reverse centuries of judicial hostility to arbitration agreements by placing them on the same footing as other contracts. *E.g.*, *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987).

Section 2 of the FAA states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

---

[3] Penal Code Section 632 provides that "[e]very person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio" violates the Section.  Penal Code Section 637.2 confers a private right of action for violations of Penal Code Section 632, and provides for $5,000 in statutory damages or treble damages, whichever is greater, as well as injunctive relief.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   "The effect of [Section 2] is to create a body of federal substantive law of arbitrability, applicable to

2   any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem. Hosp.*, 460 U.S. at

3   24.  Pursuant to Section 2, the FAA governs any (1) written arbitration provision (2) in a contract

4   evidencing a transaction "involving commerce."  In this action, the Arbitration Provision satisfies

5   both requirements.

6   　　　　*First*, the Arbitration Provision is in writing.

7   　　　　*Second*, the Account Agreement indisputably is a contract "involving commerce."  The FAA

8   defines "commerce" as "commerce among the several states." 9 U.S.C. § 1.  "The word 'involving'

9   [in Section 2 of the FAA]. . . signals an intent to exercise Congress' commerce power to the full,"

10  and the phrase "'evidencing' mean[s] only that the transaction . . . turn[s] out, *in fact*, to have

11  involved interstate commerce." *Allied-Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 273

12  (1995) (emphasis in original) ("we conclude that the word 'involving' is broad and is indeed the

13  functional equivalent of 'affecting'").

14  　　　　Preliminarily, the Arbitration Provision itself expressly states that it is governed by the FAA:

15  "This arbitration agreement is made pursuant to a transaction involving interstate commerce, and

16  shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1-16."  Exh. C to Graser Decl.  The

17  Arbitration Agreement's express designation of the FAA as its governing law, without more, is

18  sufficient to bring the Arbitration Provision under the FAA's purview.  *See, e.g., Credit Acceptance*

19  *Corp. v. Davisson*, 644 F. Supp. 2d 948, 954 (N.D. Ohio 2009) (finding FAA applied because "the

20  Contract itself provides that [t]he Federal Arbitration Act governs this Arbitration Clause.... The

21  Arbitration Clause is governed by the Federal Arbitration Act . . . and not by any state arbitration

22  law."); *Staples v. The Money Tree, Inc.*, 936 F. Supp. 856, 858 (M.D. Ala. 1996); *Thomas O'Connor*

23  *& Co. v. Ins. Co. of North Am.*, 697 F. Supp. 563, 566 (D. Mass. 1988); *Rodriguez v. American*

24  *Techs., Inc.*, 136 Cal.App.4th 1121-22 (2006) (if the parties expressly state that the FAA applies,

25  then California state arbitration law is preempted); *see also Volt Info. Sciences, Inc. v. Bd. of*

26  *Trustees*, 489 U.S. 468, 479 (1989) (courts must "rigorously enforce [arbitration] agreements

27  according to their terms.").

28  　　　　Further, even if the Arbitration Provision did not designate the FAA as its governing law, the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  result is the same.  The Account Agreement is for the extension of credit between citizens of

2  different states.  Comp. ¶10; Graser Decl. ¶ 2.  This constitutes "commerce" within the meaning of

3  Section 2 of the FAA.  *See, e.g., Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) (interpreting

4  "involving commerce" requirement under FAA broadly to include intra-state loan transaction);

5  *United States v. Wadena*, 152 F.3d 831, 853 (8th Cir. 1998) (transactions with an FDIC-insured

6  institution establish an interstate commerce nexus under the Commerce Clause even if the

7  transactions are wholly intrastate), *cert. denied*, 526 U.S. 1050 (1999); *Providian Nat'l Bank v.*

8  *Screws*, 894 So.2d 625, 627 (Ala. 2003) (credit card agreement between bank and the holders of its

9  credit card clearly involves interstate commerce); *Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d

10  554, 561 (N.D. Ohio 2004) ("loan transactions historically have been evaluated under the FAA

11  because of the banking industry's connection to commerce"); *United States v. Baker*, 82 F.3d 273,

12  275-76 (8th Cir. 1996) (ATM network was an instrumentality of interstate commerce, even if used

13  intrastate), *cert. denied*, 519 U.S. 1020 (1996).

14        Accordingly, the FAA governs the Arbitration Provision, and as a result, the Court must

15  apply federal substantive law under the FAA to determine whether the parties agreed to arbitrate this

16  dispute.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, Inc., 473 U.S. 614, 626 (1985)

17  ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the

18  parties agreed to arbitrate that dispute.  The court is to make this determination by applying the

19  federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage

20  of the Act.").

21      **B.**    **Plaintiffs Are Required to Arbitrate Their Claims Against Barclays.**

22        Under the FAA, a district court must compel arbitration if it finds that: (1) a valid arbitration

23  agreement exists between the parties, and (2) the dispute before it falls within the scope of the

24  agreement.  *See, e.g., Mitsubishi Motors Corp.*, 473 U.S. at 626-28.  A district court may not

25  consider the merits of the claims in deciding an arbitration motion.  *See, e.g., AT&T Technologies,*

26  *Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 649 (1986).  In fact, the FAA " leaves no place for the

27  exercise of discretion by a district court, but instead mandates that district courts **shall** direct the

28  parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); *Shearson v.*

2   *McMahon*, 482 U.S. 220 (1987).  Here, a valid arbitration agreement exists between Plaintiffs and

3   Barclays, and Plaintiffs' claims fall squarely within the scope of the Arbitration Provision.

        **1.**   **A Valid Arbitration Agreement Exists Between Ramon Gutierrez And**

5           **Barclays.**

6          There can be no dispute that a valid arbitration agreement exists between Ramon Gutierrez

7   and Barclays.  After all, Ramon Gutierrez applied for the Account.  RG Dep. p.45:18-25, Exh. A to

8   Yu Decl.; Graser Decl. ¶ 4.  Barclays approved the Account application, and upon approval, mailed

9   Ramon Gutierrez the Account Agreement containing the Arbitration Provision.  Graser Decl. ¶¶ 4-6.

10   The Account Agreement was enclosed in the same envelope containing Ramon Gutierrez's Account

11   credit card ending in card number 1717.  Graser Decl. ¶¶ 4-6.  Ramon Gutierrez admits that he

12   received his credit card and used his credit card.  RG Dep. p. 59-11-22, Exh. A to Yu Decl.  Thus, by

13   the express terms of the Account Agreement, Ramon Gutierrez consented to the Arbitration

14   Provision:  "By signing, keeping or using your Card or Account, you agree to the terms and

15   conditions of this Agreement."  Exh. C to Graser Decl.

16          In fact, this Court, in *Bellows v. Midland Credit Mgmt.*, 2011 WL 1691323 (S.D. Cal. May 4,

17   2011), which coincidentally involved the same Plaintiffs' counsel, enforced an arbitration provision

18   contained in a credit card agreement.  In *Bellows*, the Court ruled  that the plaintiff had entered into

19   the cardmember agreement, including the arbitration provision, by simply using his credit card: "By

20   its terms, the Agreement would be entered into as soon as the card holder used the card: 'You and

21   we are bound by this Agreement from the date of your first transaction.'"  *Id.* at 1.  *See also In*

22   *Carmack v. Chase Manhattan Bank (USA)*, 521 F. Supp. 2d 1017, 1027 (N.D. Cal. 2007) ("Plaintiff

23   accepted the terms in Chase Manhattan Bank's cardmember agreement, including a binding

24   arbitration clause, when she began using her credit card."); *Heiges v. JP Morgan Chase Bank, N.A.*,

25   521 F. Supp. 2d 641, 647 (N.D. Ohio 2007) (compelling arbitration, noting that the "issuance and

26   use of a credit card creates a legally binding agreement" and "by simply using the card, [cardholder]

27   agreed to be bound by the Agreement and all its terms"); *Davis v. JP Morgan Chase Bank*, 2004 WL

28   783382 (N.D. Ill 2004) (compelling arbitration, noting that plaintiffs accepted the modification of

1   the cardmember agreement by continuing to use the credit card after notification that the terms had

2   changed); *Fahey v. U.S. Bank Nat. Ass'n*, 2006 WL 2850529, *3 (E.D. Mo., 2006) (compelling

3   arbitration, noting that "the use of cards amounts to acceptance of the terms of the cardholder

4   agreements"); *Whitman v. Capital One Bank (USA) N.A.*, 2009 WL 4018523 (D. Md. Nov. 19, 2009)

5   (compelling arbitration, noting that "Courts have consistently held that the use of credit cards

6   amounts to acceptance of the terms of the cardholder agreements."). In sum, by using his credit

7   card, Ramon Gutierrez clearly bound himself to the Arbitration Provision.

8          **2.**    **A Valid Arbitration Agreement Exists Between Clariza Gutierrez And**

9               **Barclays.**

10         Likewise, there can be no serious dispute that a valid arbitration agreement exists between

11   Clariza Gutierrez and Barclays. Notably, the Arbitration Provision expressly states that: "For

12   purposes of this provision, 'you' includes any authorized user on the Account, agents, beneficiaries

13   or assigns of you." Exh. C to Graser Decl. Thus, Clariza Gutierrez is bound by the Arbitration

14   Provision in three separate capacities: as (1) an "authorized user," (2) an "agent," and (3) a

15   beneficiary of the Account.

16         *First,* Clariza Gutierrez admits she was an authorized user of the Account. CG Dep. p.

17   36:12-13 ("A: As my understanding, I was just an authorized user."), Exh B to Yu Decl. Like her

18   husband, Clariza Gutierrez became bound by the Account Agreement, including the Arbitration

19   Provision, when she used her credit card. *Heiges v. JP Morgan Chase Bank, N.A.*, 521 F. Supp. 2d

20   641 (N.D. Ohio 2007) (an authorized user of a credit card account, who was issued his own credit

21   card embossed with his own name, was bound by the cardholder agreement's arbitration provision);

22   *see also* Section III.B.1. above.

23         *Second,* Clariza Gutierrez is subject to the Arbitration Provision as an "agent" of Ramon

24   Gutierrez. An agency relationship is created "when one person (a 'principal') manifests assent to

25   another person (an 'agent') that the agent shall act on the principal's behalf and subject to the

26   principal's control, and the agent manifests assent or otherwise consents so to act." Actual authority

27   is "created by a principal's manifestation [through either words or conduct, see § 1.03] to an agent

28   that, as reasonably understood by the agent, expresses the principal's assent that the agent take action

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

on the principal's behalf." *Id.* § 3.01.  Apparent authority is "created by a person's manifestation that another has authority to act with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized and the belief is traceable to the manifestation." *Id.* § 3.03.[4]

Here, although Ramon Gutierrez was the primary Account holder, he gave his wife Clariza Gutierrez express authority to manage the Account in all respects and to communicate directly with Barclays on all Account matters.  Ramon Gutierrez even called Barclays to grant Clariza Gutierrez this authority, making her his actual agent for purposes of the Account:

> Q:   Okay.  How did you give her authorization to call Juniper on your behalf?
> A:   Through a live agent.
>
> Q:   Can you explain what you mean by "a live agent"?
> A:   A representative from Juniper.
>
> Q:   Okay.  So you actually called up a representative of Juniper and said, "My wife is authorized to - -"
> A:   Yes.
>
> Q:   "—to make calls on my behalf"?
> A:   Yes.
>       . . .
> Q:   Why did you contact a live agent to advise Juniper that your wife was authorized to handle your account?
> A:   Because she's the one that handles the finances.
>       . . .
> Q:   Do you recall speaking to representatives of Juniper about the delinquent Juniper account?
> A:   I have, but I gave authorization to my wife, so she's the one that spoke to them.

---

[4] The Account Agreement's choice-of-law provision states as follows: "GOVERNING LAW: THIS AGREEMENT AND YOUR ACCOUNT WILL BE GOVERNED BY THE LAWS OF THE STATE OF DELAWARE AND, AS APPLICABLE, FEDERAL LAW." Exh. C to Graser Decl.  However, Delaware law and federal law are the same on this issue as they both follow the Restatement of Agency. *See e.g. West v. Flonard*, 2010 WL 892190, *2 (Del. Super. 2010) ("The Delaware Supreme Court has recognized the Restatement (Second) of Agency as 'an authoritative source for guidance'"), *quoting Fisher v. Townsends, Inc.*, 695 A.2d 53, 59 (Del. Supr. 1997). *See also Am. Tel. and Tel. Co. v. Winback and Conserve Program*, 42 F.3d 1421, 1431 (3rd Cir. 1994) ("As long ago as 1928, the Supreme Court applied as a matter of federal common law general principles of agency law" and later "followed the approach of the Restatement (Second) of Agency"); *Sun Microsystems Inc. v. Hynix Semiconductor, Inc.*, 622 F. Supp. 2d 890, 899 (N.D. Cal. 2009) ("Federal common law is in turn guided by those principles set forth in the Restatement of Agency").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

     …
2   Q: Do you recall if you made the phone calls?
  A: I did.
3
4   Q: Okay.
  A: To authorize my wife.

5 RG Dep. pp. 43:13-24, 44:8-12, 80:5-8, 80:20-25, Exh. A to Yu Decl.

6   Clariza Gutierrez acted upon this authority by managing the Account and communicating

7 with Barclays on Account matters, making her both an actual agent and an apparent agent of Ramon

8 Gutierrez for all purposes concerning the Account:

9   Q: Do you usually handle the finances in the family?
  A: Yes.
10
11   Q: Why is that?
  A: Because I'm just good with bills and my husband doesn't have
12     good verbal skills, so I would make all the payments, handle the
    finances, and do everything.
13     …
14   Q: So was your husband correct, that you were allowed to handle the
    Juniper Barclays account?
15   A: As my understanding, I was just an authorized user.
  Q: No, but I mean regarding paying the bills.
16   A: To pay the bills, yes.

17   Q: Were you authorized to speak on the account?
  A: Yes, at one point.
18
19   Q: Did you have access to his email account to pay bills?
  A: Yes.
20
21   Q: Does that include access to his email account to pay the Juniper
    Barclays?
22   A: Yes.

23 CG Dep. p. 35:5-12, 36:10-24, Exh. B to Yu Decl.

24   Hence, as an agent for Ramon Gutierrez for all account management purposes, Clariza

25 Gutierrez is bound by the Arbitration Provision. *Larson v. Speetjens*, 2006 WL 2567873 at *7 (N.D.

26 Cal. 2006) (compelling arbitration of claims under agency principle). *See also*, *Berman v, Dean

27 Witter & Co., Inc.,* 44 Cal. App. 3d 999, 1003-04 (1975) (husband who ordered margin purchases of

28 futures through his wife's brokerage account with defendant was bound by the arbitration provision

- 11 -

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1 in the brokerage account agreement as an agent of his wife); *Letizia v. Prudential Bache Securities,*

2 *Inc.,* 802 F.2d 1185, 1188 (9th Cir. 1986) (holding that broker's employees, who were

3 nonsignatories to the brokerage agreement, could be bound by agreement's arbitration clause);

4 *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 110, 1121 (3rd Cir. 1993) ("because

5 a principal is bound under the terms of a valid arbitration clause, its agents, employees, and

6 representatives are also covered under the terms of such agreements").

7        **Lastly**, Clariza Gutierrez's use of the credit card to make purchases binds her to the

8 Arbitration Provision as a "beneficiary" of the Account.  Again, Clariza Gutierrez was issued her

9 own credit card (ending in card number 1725) embossed with her own name.  Clariza Gutierrez

10 received her credit card and the Account Agreement in the same envelope her husband received his

11 credit card, and used her credit card to make personal purchases for herself.  Graser Decl. ¶¶ 5, 6;

12 RG Dep. p. 59:17-19, 71:15-25, Exh. A to Yu Decl.; CG Dep. p. 58:7-9, 36:12-13, 42:15-16, 43:16-

13 18, Exh. B to Yu Decl.  As a "beneficiary" of the Account, Clariza Gutierrez is a party to the

14 Account Agreement and bound by the Arbitration Provision.

15        Indeed, a party is not allowed to claim the benefit of the contract and simultaneously avoid

16 its burdens. *Larson,* 2006 WL2567873. "In the arbitration context, courts have concluded that a

17 nonsignatory to a contract containing an arbitration clause may be estopped from refusing to comply

18 with that clause if the nonsignatory knowingly receives a 'direct benefit' from the underlying

19 contract." *World Group Securities, Inc. v. Allen*, 2007 WL 4168572 (D. Ariz. Nov. 20, 2007).

20        Here, Clariza Gutierrez plainly admits to reaping the benefits of the Account – she was

21 issued her own credit card which she then used to make purchases.  Consequently, Clariza Gutierrez

22 is now equitably estopped from arguing that she is a stranger to the Account and the Arbitration

23 Provision which governs it. *E.g., Larson*, 2006 WL 2567873 at *4 (binding trustee to arbitration

24 agreement under principles of equitable estoppel); *World Group Securities, Inc.*, 2007 WL 4168752

25 *4 (plaintiff, a non-signatory to the contract at issue, knowingly accepted benefits of the contract,

26 and hence, was equitably estopped from denying the arbitration provision in the contract);

27 *International Paper Co. v. Schwabedissen Maschinen & Anglagen GMBH*, 206 F.3d 411, 417-418

28 (4th Cir. 2000) ("A nonsignatory is estopped from refusing to comply with an arbitration clause

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARCLAYS BANK
DELAWARE'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY ACTION

'when it receives a direct benefit from a contract containing an arbitration clause.'"). In the end, whether as an authorized user, an agent or a beneficiary, all analyses lead to the same conclusion: Clariza Gutierrez is bound by the Arbitration Provision.

**3.     Any Dispute Over Whether Plaintiffs are Bound by the Arbitration Provision Must Be Decided by the Arbitrator.**

In any event, the Court need not address these threshold questions of whether a valid and enforceable arbitration agreement exists between Plaintiffs and Barclays. The Arbitration Provision itself specifically states that the arbitrator, "exclusively and finally," is to decide the question concerning the applicability of the Arbitration Provision:

> Claims regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved exclusively and finally by binding arbitration[.]

Exh. C to Graser Decl.

Again, this Court in *Bellows* examined this same threshold question of who decides the validity and enforceability of the arbitration provision at issue: "But the decision is even easier here, because the arbitration agreement provides that the arbitrator is to decide questions concerning the validity of the arbitration agreement. As provided in the Agreement the determinations of whether the arbitration agreement was validly entered into, and whether [defendant] can enforce it, are committed to the arbitrator." *Bellows, 2011 WL 1691323 at* 2, citing Madrigal v. New Cingular Wireless Servs., Inc.*, 2009 WL 2513478, slip op. at *6 (E.D. Cal. Aug. 17, 2009) *citing Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'Ship*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Monex Deposit Co. v. Gilliam*, 616 F.Supp.2d 1023, 1026 (C.D. Cal. 2009). Accordingly, to the extent that any challenge to the validity or enforceability to the Arbitration Provision is lodged, the arbitrator, not the Court, should resolve these issues.

**C.     Plaintiffs' Claims Fall Within The Scope Of The Arbitration Provision.**

Not only are Plaintiffs bound by the Arbitration Provision, but their claims against Barclays fall squarely within the scope of the Arbitration Provision. The FAA mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25; *accord Fazio v. Lehman Bros. Inc.*, 340 F.3d at 392; *Balar Equip.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARCLAYS BANK DELAWARE'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY ACTION

1   *Corp. v. VT Leeboy, Inc.*, 336 Fed. Appx. 688, 689 (9th Cir. 2009) ("In the absence of any express

2   provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a

3   purpose to exclude the claim from arbitration can prevail."). The United States Supreme Court has

4   held that a presumption of arbitrability exists where a contract contains an arbitration clause, and that

5   an order to arbitrate should not be denied "unless it may be said with positive assurance that the

6   arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT&T*

7   *Technologies, Inc.*, 475 U.S. at 650; *Eagle Star Ins. Co. v. Highlands Ins. Co.*, 165 Fed. Appx. 529,

8   531 (9th Cir. 2006) ("The existence of an arbitration agreement establishes a federal presumption in

9   favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in

10  favor of arbitration").

11      In this action, Plaintiffs' only allegation is that Barclays recorded, monitored or

12  eavesdropped on the collection calls between Barclays and Plaintiffs without notice to Plaintiffs and

13  without obtaining Plaintiffs' prior consent, thereby violating Penal Code Sections 637 and 632.7.

14  The Account Agreement, however, specifically discloses to Plaintiffs that Barclays may record or

15  monitor its calls with Plaintiffs, and Plaintiffs consented to such monitoring or recording:

**Phone Calls/Electronic Communications**
In the regular course of our business, for quality control purposes,
we may monitor and record phone conversations made or received
by our employees.  Similarly, we may monitor and record e-mail
or conversations on our website between you and our employees.
You agree that we will have such right with respect to all phone
conversations, e-mail or conversations between you and our
employees, whether initiated by your or any of our employees.

21  Exh. C to Graser Decl.

22      According, there can be no dispute that this action, at the very least, "arises from" or "relates

23  to" a specific provision in the Account Agreement: the "Phone Calls/Electronic Communications"

24  provision.

25      Moreover, even in the absence of the "Phone Calls/Electronic Communications" provision,

26  Plaintiffs' claims challenge Barclays' recording of collection calls on the Account, and hence, is

27  certainly one that "aris[es] from or relat[es] in any way to this Agreement or your Account, or any

28  transaction on your Account including (without limitation) Claims based on contract, tort (including

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARCLAYS BANK
DELAWARE'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY ACTION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    intentional torts), fraud, agency, negligence, statutory or regulatory." Exh. C to Graser Decl.

2        Furthermore, the fact that Plaintiffs are alleging the violation of a criminal statute with a

3    treble damages provision in this action is of no import as the "duty to enforce arbitration agreements

4    is not diminished when a party bound by an agreement raises a claim founded on statutory rights."

5    *Shearson*, 482 U.S. at 226 (federal RICO claims, despite their overlapping civil and criminal

6    provision and treble damages provision, is subject to arbitration under the FAA), *quoting Sedima*

7    *S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 492 (1985) (compelling arbitration of antitrust claim: "The fact

8    that conduct can result in both criminal liability and treble damages does not mean that there is not a

9    bona fide civil action. The familiar provisions of both criminal liability and treble damages under

10   the antitrust laws indicate as much.")

11       For all these reasons, pursuant to the FAA, the Court should compel Plaintiffs to arbitrate

12   their claims against Barclays. 9 U.S.C. § 4 (a district court must enter an order to arbitrate "upon

13   being satisfied that the making of the agreement for arbitration or the failure to comply therewith is

14   not in issue.").

15       **D.    Plaintiffs Agreed to Arbitrate Their Disputes On an Individual Basis.**

16       In addition to agreeing to arbitrate their disputes with Barclays, Plaintiffs agreed to arbitrate

17   their disputes with Barclays on an individual basis: **"No class actions, other representative actions,**

18   **or joinder or consolidation of any Claim with a Claim of any other person or entity shall be**

19   **allowable in arbitration, without the written consent of both you and us."** Exh. C to Graser

20   Decl. (emphasis in original). This contractual agreement by Plaintiffs to arbitrate their disputes with

21   Barclays on an individual basis is enforceable, and any contemplated challenge to this provision, or

22   to the Account Agreement as whole, is futile.

23       Specifically, the United States Supreme Court's recent decisions in *Stolt-Nielsen, S.A. v.*

24   *Animal/Feeds Int'l Corp.*, 130 S. Ct. 1758 (2010) and *AT&T Mobility LLC v. Concepcion*, 131 S. Ct.

25   1740 (2011) conclusively dispose of all doubts as to the enforceability of class action waivers in

26   arbitration provisions. In *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010), the

27   United States Supreme Court held that the FAA prohibits the imposition of class procedures where

28   the parties did not expressly agree to class arbitration. *See id.* at 1775 ("a party may not be

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  compelled under the FAA to submit to class arbitration unless there is a contractual basis for

2  concluding that the party agreed to do so").  This result was required because "enforcing an

3  agreement to arbitrate or construing an arbitration clause, courts ... must 'give effect to the

4  contractual rights and expectations of the parties' and that "'the parties' intentions control.'"  *Id.* at

5  1774 (citations omitted).  Accordingly, class-wide arbitration cannot be forced upon a party that did

6  not expressly agree to such a proceeding.

7        Additionally, on April 27, 2011, the Supreme Court in *AT&T Mobility LLC v. Concepcion*,

8  citing *Stolt-Nielsen,* answered the corollary question of whether class action waivers in arbitration

9  provisions render the arbitration provision unconscionable, and hence, unenforceable.  In

10  *Concepcion*, the Supreme Court reversed the Ninth Circuit's holding under California law that an

11  arbitration provision containing a class action waiver in certain consumer contracts of adhesion are

12  unconscionable (the "*Discover Bank* rule").  After examining the strong federal policy in favor of

13  arbitration and stating that the principal purpose of the FAA is to "ensure that private arbitration

14  agreements are enforced according to their terms," *id.* at 1748 (internal quotations omitted), the

15  Court held that the *Discover Bank* rule, "which stands as an obstacle to the accomplishment and

16  execution of the full purpose and objectives of Congress," is preempted by the FAA.  *Id.* at 1753

17  (internal citations and quotations omitted).

18        Since *Concepcion*, district courts across different jurisdictions – citing to *Concepcion* – have

19  compelled individual arbitration in class actions pursuant to arbitration provisions containing class

20  action waivers.  *See Arellano v. T-Mobile USA, Inc.*, 2011 WL 1842712 (N.D. Cal. May 16, 2011)

21  (class action against cellular telephone company); *Bellows v. Midland Credit Mgmt., Inc.*, 2011 WL

22  1691323 (S.D. Cal. May 4, 2011) (class action against credit card debt collection agency); *Day v.*

23  *Persels & Assocs., LLC.*, 2011 WL 1770300 (M.D. Fla. 2011) (class action against consumer credit

24  repair agency); *Zarandi v. Alliance Data Sys., Corp.*, 2011 WL 1827228 (C.D. Cal. May 9, 2011)

25  (class action against credit card company); *In re Checking Account Overdraft Litigation*, 2011 WL

26  1663989 (C.A. 11 (Fla.) April 29, 2011) (vacating and remanding district court's order denying

27  motion to compel arbitration).  Similarly, in accordance with the unambiguous terms of the

28  Arbitration Provision, and clear controlling legal precedent, Plaintiffs' instant claims against

1    Barclays must be arbitrated on an individual basis.

2              **E.      This Action Should Be Stayed Pending Arbitration.**

3              In addition to moving to compel individual arbitration of Plaintiffs' claims, Barclays moves

4    for a stay of this action pending completion of the arbitration.  The FAA provides that once the court

5    is satisfied that the matter is subject to arbitration, the court "shall on application of one of the

6    parties, stay the trial of the action."  9 U.S.C. § 3.  *See e.g., Moses H. Cone Mem. Hosp.*, 460 U.S.

7    940; *Mitsubishi Motors Corp.,* 473 U.S. at 639-40.  As examined above, Plaintiffs' claims are

8    subject to binding arbitration.  Accordingly, this action should be stayed pending the arbitration of

9    this matter on an individual basis.

10   **IV.   CONCLUSION**

11             For all the foregoing reasons, Barclays respectfully requests that this Court order Plaintiffs to

12   arbitrate their claims on an individual basis and to stay these proceedings pending completion of the

13   arbitration.

14                                               Respectfully submitted.

15

16   DATED:  June 13, 2011                        REED SMITH LLP

17

18                                               By _____s/ *Jordan Yu*_____
                                                     Jordan Yu
19                                                   jsyu@reedsmith.com
                                                     Attorneys for Defendants
20                                                   Barclays Bank Delaware

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARCLAYS BANK
DELAWARE'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY ACTION